No. 03-419

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 149

STATE OF MONTANA,

        Plaintiff and Respondent,

   v.

WARREN WARCLUB,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone, Cause No. DC 2001-0767
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      Robert L. Kelleher Jr., Attorney at Law, Billings, Montana

      For Respondent:

      Honorable Mike McGrath, Montana Attorney General, C. Mark Fowler,
Assistant Attorney General, Helena, Montana; Dennis Paxinos, Yellowstone
County Attorney, Scott Twito, Deputy County Attorney, Billings, Montana

Submitted on Briefs:  October 19, 2004

Decided:  June 14, 2005

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Warren Warclub pled guilty to the offense of deliberate homicide in the Montana Thirteenth Judicial District Court, Yellowstone County, on July 24, 2002. Shortly thereafter, Warclub moved to withdraw his guilty plea. After a hearing, the District Court denied his motion. Warclub appeals. We affirm.

## ISSUE

¶2 Did the District Court err when it denied Warclub's motion to withdraw his guilty plea?

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 On October 5, 2001, Warclub was charged by information with deliberate homicide in the death of Domingo Pacheco. On October 9, 2001, Warclub entered a plea of not guilty, and the court appointed the Yellowstone County Public Defender's Office to represent him. Chief Public Defender L. Sanford Selvey, II, and Chief Deputy Public Defender Roberta Drew assumed the responsibility of representing Warclub.

¶4 After a few continuances, Warclub's trial was scheduled for July 30, 2002. Selvey filed various motions on Warclub's behalf. On July 12, 2002, Warclub filed a *pro se* Motion to Dismiss Counsel, stating that he had sought counsel elsewhere and no longer desired the services of the Public Defender's Office. The District Court heard his motion that day. Warclub explained that he intended to hire Kevin Gillen to represent him. The District Court advised Warclub of his right to counsel and told the Public Defender's Office to assist Warclub in contacting Gillen. Warclub apparently never reached an agreement with Gillen,

2

and the Public Defender's Office remained his counsel.

¶5    Selvey filed various motions to suppress on Warclub's behalf. Following a hearing on July 18, 2002, the District Court granted a motion to suppress the results of hand swabs conducted on Warclub. Selvey subsequently filed more pre-trial motions.

¶6    On July 24, 2002, Warclub appeared and entered a change of plea, pursuant to a plea agreement with the State. The court reviewed a copy of the plea agreement which Warclub and Drew had initialed at the bottom of each page. Warclub affirmed that he had read the document, reviewed it with his attorney, and discussed his constitutional rights with his attorney. The court ascertained that Warclub understood that he had a right to a jury trial, and that he had had time to consider whether to change his plea to guilty. Selvey informed the court that on July 23, 2002, he met with Warclub for about two hours and that Warclub's brother Robert also attended the meeting to give Warclub comfort and support. Selvey further explained that Warclub had been brought to the courtroom on that day and the State brought in the evidence that it intended to produce for trial so that Warclub could view it.

¶7    At the change-of-plea hearing, Warclub testified that on the night of Pacheco's death, they were drinking together. Pacheco touched him, so Warclub stabbed him in the stomach with a dagger. The court asked Selvey if there was any evidence of self-defense, and Selvey replied that it had been considered, but in light of his office's investigation and the crime lab results there was no credible evidence to support the defense.

¶8    The court asked Warclub, "Do you feel like you had to stab this guy to prevent him seriously injuring or even killing you?" Warclub replied in the affirmative. After further

3

questioning, the court stated that Warclub might have a defense to the crime of deliberate homicide, and that while the Public Defender's Office's investigation could not confirm that this was the case, Warclub was entitled to tell his story to a jury if he so chose. Warclub became confused and Selvey requested a recess to discuss the case further with Warclub. The hearing recessed for a few hours while the court attended to another matter.

¶9 When court reconvened, Warclub asserted that he desired to enter a guilty plea, and that he had not acted in self-defense. The State made an offer of proof of the evidence it had intended to submit at trial. Ultimately, the court accepted Warclub's plea.

¶10 Three days later, on July 27, 2002, Warclub sent a "kite," or Inmate Special Request Form, to Selvey, indicating in one sentence that he wanted to withdraw his guilty plea. On September 10, 2002, the District Court convened a hearing at which Selvey explained that he had received a letter from Warclub in which Warclub complained that he was dissatisfied with his legal representation, and that he wished to withdraw his guilty plea because he did not believe he had been adequately advised. The court deemed the proceeding a Stage I *Finley* hearing, pursuant to the process set forth in *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 208 (overruled on other grounds by *State v. Gallagher*, 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21).

¶11 In response to the District Court's queries, Warclub explained that he did not believe his attorneys came to see him often enough while he was in jail, and he felt that his counsel was "against" him. Upon further inquiry, Warclub denied any recollection of the July 24 change-of-plea hearing, even after attempts were made to refresh his memory. Because

4

Warclub was unable to recall a lengthy hearing which had occurred less than two months previously, the court stated that it could not determine whether Warclub's complaints about his counsel were seemingly substantial, and the court ordered that a psychiatric exam occur prior to Warclub's sentencing hearing, for a determination of his competency. The court stated that after Warclub's competency was determined, it would then decide what action to take on his ineffective assistance claims.

¶12 On October 1, 2002, after a psychiatric evaluation of Warclub, the court held another Stage I *Finley* hearing, at which the State, without objection, moved for investigation of Warclub's claims. The court appointed Melissa Edwards as Warclub's counsel to investigate his ineffective assistance claims. Warclub subsequently claimed that Edwards was also ineffective; however, after a hearing inquiring into Warclub's claims against Edwards on October 24, 2002, the District Court ordered that she remain on the case.

¶13 On December 23, 2002, Warclub, through his counsel Edwards, moved to withdraw his guilty plea pursuant to § 46-16-105(2), MCA, alleging that the District Court erred when it failed to ask Warclub if he was satisfied with his counsel when it accepted his change of plea. Following briefing by the parties, the District Court conducted a Stage II *Finley* hearing and a hearing on Warclub's motion to withdraw his plea on January 7, 8, and 9, 2003. After the parties' closing arguments, the court orally pronounced that Warclub's counsel had not been ineffective, and further denied Warclub's motion to withdraw his plea. On January 13, 2003, Edwards withdrew from the case and the Public Defender's Office resumed its representation of Warclub.

5

¶14 On March 14, 2003, Warclub filed a *pro se* motion to dismiss District Court Judge G. Todd Baugh and Deputy Public Defender Carl Debelly, who had represented Warclub in the later stages of his case. The court denied the motion and ordered Warclub's sentencing to go forward as scheduled. Warclub then filed a series of *pro se* motions, and the District Court held another hearing on April 1, 2003, to deal with these motions and determine the status of Warclub's counsel. After hearing testimony from Warclub, his Public Defender, and the County Attorney's Office, the court determined that the issues that Warclub had most recently raised *pro se* regarding alleged ineffective assistance of counsel had already been considered and resolved by the court, and that the Public Defender's Office would remain Warclub's counsel for his upcoming sentencing hearing. The court then heard arguments on each of Warclub's remaining *pro se* motions and denied them in turn.

¶15 On April 15, 2003, the District Court sentenced Warclub to the Montana State Prison for fifty-five years on the count of deliberate homicide, with an additional ten years for the use of a weapon, to be served consecutively. From the court's denial of his motion to withdraw his guilty plea, Warclub appeals.

## STANDARD OF REVIEW

¶16 Pursuant to § 46-16-105(2), MCA, a court may for good cause permit a plea of guilty to be withdrawn and a plea of not guilty substituted. "Good cause" includes the involuntariness of the plea, but it may include other criteria. *State v. Lone Elk*, 2005 MT 56, ¶ 19, 326 Mont. 214, ¶ 19, 108 P.3d 500, ¶ 19.

6

¶17    In *Lone Elk*, we adopted a new test to be applied in those cases in which a defendant has sought to set aside a guilty plea. We said we would determine whether the plea was entered voluntarily, and that, because determining whether the facts met the standard for voluntariness was a mixed question of law and fact, we would review the matter *de novo*. *Lone Elk*, ¶ 10. Before applying this test to the case before us, we wish to clarify our holding in *Lone Elk*.

¶18    In *Lone Elk*, we relied upon *Brady v. United States* (1970), 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747, in which the United States Supreme Court examined a defendant's guilty plea to determine whether he had pled voluntarily. The Supreme Court in *Brady* stated:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).

*Brady*, 397 U.S. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d at 760 (citation omitted). When we paraphrased this language, we inadvertently conflated it with a quote from *Bram v. United States* (1897), 168 U.S. 532, 542-43, 18 S.Ct. 183, 187, 42 L.Ed. 568, 573, which *Brady* distinguished.[1] We take the opportunity now to reaffirm our intention to use the *Brady*

---

[1]  *Brady*, 397 U.S. at 753, 90 S.Ct. at 1471, 25 L.Ed.2d at 759, explains that *Bram*, 168 U.S. at 542-43, 18 S.Ct. at 187, 42 L.Ed. at 573, holds: "To be admissible, a confession must be 'free and voluntary: that is, must not be extracted by any sort of threats or violence, nor obtained by any direct or implied promises, however slight, nor by the exertion of any improper influence.'"

7

standard for the voluntariness of guilty pleas, as articulated in *Brady*, but without

incorporating *Bram*'s test.

---

*Brady*, 397 U.S. at 754, 90 S.Ct. at 1472, 25 L.Ed.2d at 759, explains that *Bram* dealt with a confession given by an unrepresented defendant during a custodial interrogation, and that in such circumstances "even a mild promise of leniency was deemed sufficient to bar the confession, not because the promise was an illegal act as such, but because defendants at such times are too sensitive to inducement. . . ." It was the "however slight" language, which *Brady* distinguished as applying only to *unrepresented* defendants during custodial interrogations, that we mis-attributed as part of the *Brady* standard.

8

¶19   Based upon our reliance on *Brady*, in *Lone Elk*, we rejected both the *Miller* standard[2] and the *Huttinger* test[3]. We noted that *Miller*'s requirement of a "strong inducement" is not precisely aligned with the *Brady* standard, which requires that the inducement be "improper." *Lone Elk*, ¶ 22. We further explained that, while two factors of the *Huttinger* test--the adequacy of the district court's interrogation and the dismissal of another charge via plea bargain--may bear on the question of voluntariness, case-specific considerations may also bear on that question which would not be analyzed under the *Huttinger* test. *Lone Elk*, ¶ 23. *Lone Elk* does not direct that the *Huttinger* test factors are not to be considered; rather, it posits that the test fails as an adequate measure of whether a plea was entered into voluntarily. However, here, as the "case-specific considerations" of this particular case demonstrate, the adequacy of the District Court's interrogation is a key issue under consideration here.

¶20   In *Lone Elk*, we further observed that historically we reviewed a district court's denial of a defendant's motion to withdraw a guilty plea to determine whether the court abused its

---

[2] "[A] plea of guilty will be deemed involuntary where it appears that the defendant was laboring under such a strong inducement, fundamental mistake, or serious mental condition that the possibility exists he may have pled guilty to a crime of which he is innocent." *State v. Miller* (1991), 248 Mont. 194, 197, 810 P.2d 308, 310 (emphasis removed). See also *State v. Pelke* (1964), 143 Mont. 262, 271, 389 P.2d 164, 169, where this test appears to have been articulated for the first time.

[3] The three factors, among others, which are taken into consideration in determining whether a district court should allow the withdrawal of a guilty plea are: (1) the adequacy of the interrogation by the district court of the defendant's understanding of the consequences of his plea; (2) the promptness with which the defendant attempts to withdraw the previous plea; and (3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge. *State v. Huttinger* (1979), 182 Mont. 50, 54, 595 P.2d 363, 366.

discretion. *Lone Elk*, ¶ 10 (citation omitted). "Abuse of discretion" is, by definition, applicable to discretionary trial court rulings. See, e.g., *Montana Rail Link v. Byard* (1993), 260 Mont. 331, 337, 860 P.2d 121, 125 (abuse of discretion standard of review is applied to discretionary rulings, such as trial administration issues, post-trial motions and similar rulings); *State v. Mummey* (1994), 264 Mont. 272, 276, 871 P.2d 868, 870 (standard of review for a district court's denial of a motion for a new trial is whether the district court abused its discretion).

¶21 Relying, in part, upon *Lambert v. Blodgett* (9th Cir. 2004), 393 F.3d 943, we held that the voluntariness of a plea is not a discretionary ruling, but rather is a mixed question of fact and law. *Lone Elk*, ¶ 10. In *Lambert*, the United States Court of Appeals for the Ninth Circuit reversed the granting of a habeas petition by the United States District Court for the Western District of Washington because that court "erroneously disregarded" the Washington state court's factual findings. *Lambert*, 393 F.3d at 949. The Court of Appeals explained that the federal district court was statutorily mandated to review a state court's factual findings to determine if they were clearly erroneous. *Lambert*, 393 F.3d at 962. However, the mixed question of law and fact in that case would be reviewed *de novo*. *Lambert*, 393 F.3d at 965. The court explained that mixed questions of law and fact are those in which "the historical facts are admitted or established, the rule of law is undisputed, and the issue is whether the facts satisfy the statutory standard." *Lambert*, 393 F.3d at 965 (quoting *Pullman-Standard v. Swint* (1982), 456 U.S. 273, 289 n.19, 102 S.Ct. 1781, 1790,

10

72 L.Ed.2d 66, 80). Based upon the holding of the 9th Circuit and other jurisdictions--that mixed questions may be reviewed *de novo*--we determined to do the same. *Lone Elk*, ¶ 10.

¶22   *Lambert* explains that the factual findings underlying a state court's mixed question determination are accorded a presumption of correctness, and adds further that new federal statutes have restricted the scope of federal review so that *de novo* review of mixed questions is no longer appropriate without according proper deference to the state court's underlying factual findings. *Lambert*, 393 F.3d at 976 (citations omitted). While voluntariness is a legal conclusion not entitled to a presumption of correctness, the underlying findings that no threats, misrepresentations, or improper promises occurred are facts entitled to a presumption of correctness. *Lambert*, 393 F.3d at 976 (citation omitted).

¶23   Accordingly, to clarify our holding in *Lone Elk*, we will review the trial court's underlying factual findings, or "historical facts," to determine if they are clearly erroneous. Findings of fact are clearly erroneous if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been made. *State v. Eixenberger*, 2004 MT 127, ¶ 13, 321 Mont. 298, ¶ 13, 90 P.3d 453, ¶ 13 (citation omitted). We will then review the ultimate, mixed question of voluntariness *de novo*, to determine if the district court's interpretation of the law--and application of the law to facts--is correct.

¶24 Henceforth, with respect to appeals from denials of motions to withdraw guilty pleas, we will review the findings of fact of the trial court to determine if they are clearly erroneous, and conclusions of law to determine if they are correct. When the voluntariness of the plea is at issue, we will review that ultimate mixed question of law and fact *de novo*, to determine if the trial court was correct in holding that the plea was voluntary.

### DISCUSSION

¶25 Did the District Court err when it denied Warclub's motion to withdraw his guilty plea?

¶26 Warclub argues that the District Court erred when it denied his motion to withdraw his guilty plea. He claims that the District Court's oral colloquy at his change-of-plea hearing was inadequate because the court failed to inquire if he was satisfied with his counsel and his counsel's advice. This, he claims, is particularly significant because he had previously communicated his dissatisfaction with the services of the Public Defender's Office, and twelve days before that hearing, had filed a *pro se* motion to dismiss his attorneys. Six days before the change-of-plea hearing, he testified that he wanted another lawyer because he did not know what was going on with his case or what his lawyers were doing for him. Thus, he argues, he has demonstrated good cause for the withdrawal of his plea, and the District Court erred in not allowing him to do so. Warclub further argues that this Court has previously ruled that a district court's failure to inquire into the competency of counsel is not harmless error, citing *State v. Bowley* (1997), 282 Mont. 298, 938 P.2d 592.

12

¶27 The State responds that Warclub's challenge of the sufficiency of the court's interrogation relates to form and not substance. The fundamental purpose of the court's interrogation, the State argues, is to ensure that a defendant understands the consequences of entering a guilty plea. Warclub has not argued that he did not understand the consequences of entering such a plea, nor does he offer any explanation as to what his counsel might have done which would have altered his decision to plead guilty.

¶28 The State further argues that Montana law does not require an open-court interrogation about a defendant's satisfaction with his counsel at a change-of-plea hearing, especially in instances such as the present case when the defendant's written and signed Acknowledgment of Waiver of Rights--which the District Court reviewed with him at the change-of-plea hearing--explicitly states that he was satisfied with the services and advice of his counsel. The State further argues that § 46-12-210(2), MCA, mandates that a written acknowledgment that a defendant understands his rights fulfills the requirements of the court's interrogation. Finally, the State argues that at the change-of-plea hearing, Warclub orally confirmed his understanding of the Acknowledgment of Waiver of Rights, in which he expressed his satisfaction with counsel.

¶29 In denying Warclub's motion to withdraw his guilty plea on January 9, 2003, the court found that Selvey and Drew were experienced trial attorneys, who were prepared and ready to try the case had Warclub not changed his plea. The court concluded that Warclub's counsel had been effective, and thus his claim of ineffective assistance did not form a basis for withdrawal of his plea. The court stated,

13

I recognize that before a change of plea that the defendant can't be ignorant of his rights, he can't be under undue influence of hope or fear, can't be operating under mistaken impressions or misapprehensions and it's got to be a voluntary plea, and I recognize that if there are doubts, they need to be resolved in favor of trial. The problem is here, I don't have any doubts.

¶30 The court went on to state that while it was the court's usual practice to inquire orally as to whether the defendant was satisfied with his attorneys before accepting a plea, it nonetheless did not automatically follow that failing to ask this question resulted in allowing the defendant to withdraw the plea. The court stated that the purpose of such an inquiry would be to alert the court to any dissatisfaction so that the court could then make further inquiry to assure that the defendant had had effective assistance; in the case at hand, the court had addressed that very issue in Warclub's case less than a week before the change-of-plea hearing. The District Court noted that at that inquiry, Warclub had been unable to express any basis for concern about the effectiveness of his counsel, and in fact during that inquiry, Warclub stated that he was willing to continue with his current counsel. Finally, the court observed that Warclub's written Acknowledgment of Waiver of Rights indicated that he was satisfied with his attorneys, and that upon questioning by the District Court, Warclub testified that he had read and understood the document. Thus, the District Court concluded, Warclub pled guilty voluntarily, with a knowledgeable understanding and waiver of his rights to a trial, and would not be granted leave to change his plea.

¶31 Warclub does not argue on appeal that his trial counsel was ineffective; rather, he argues that because the District Court failed to inquire orally as to whether he was satisfied with counsel at his change-of-plea hearing, the court's interrogation was "inadequate as a

14

matter of law," and his motion to withdraw his plea must therefore be granted, because he has good cause to withdraw his plea.

¶32   In determining whether a district court erred in denying a request to withdraw a guilty plea, we have looked to the adequacy of the district court's interrogation at the time of the plea regarding the defendant's understanding of the consequences of the plea. *State v. Keys*, 1999 MT 10, ¶ 11, 293 Mont. 81, ¶ 11, 973 P.2d 812, ¶ 11 (overruled by *Lone Elk*, ¶ 23). Under *Brady*, we will not overturn a district court's denial of a motion to withdraw a guilty plea if the defendant was aware of the direct consequences of such a plea, and if his plea was not induced by threats, misrepresentation, or an improper promise such as a bribe. *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d at 760. While voluntariness is a legal conclusion not entitled to a presumption of correctness, the underlying findings that no threats, misrepresentations, or improper promises occurred are facts entitled to a presumption of correctness. *Lambert*, 393 F.3d at 976 (citation omitted). In the case at hand, the District Court made no findings that Warclub was threatened, or had experienced misrepresentations or improper promises made to him in exchange for his plea. Warclub does not claim that he was unaware of the consequences of his guilty plea, nor does he claim to have been induced into pleading guilty by threats, misrepresentation, or an improper promise. We therefore turn to the question of whether the District Court erred as a matter of law when it concluded his plea was not involuntary.

15

¶33 Warclub maintains we have previously ruled that a district court's failure to inquire into the competency of counsel is not harmless error, citing *State v. Bowley* (1997), 282 Mont. 298, 938 P.2d 592. However, *Bowley* is readily distinguishable. There, not only did the court not inquire into whether Bowley was satisfied with his counsel, but the written acknowledgment of rights was not executed until two weeks *after* the change-of-plea hearing--and after the defendant's oral request to withdraw his guilty plea during the change-of-plea hearing. *Bowley*, 282 Mont. at 301-02, 938 P.2d at 594. We concluded that the written acknowledgment of rights did not satisfy the requirement that the trial court inquire into the defendant's satisfaction with his counsel *specifically because the written acknowledgment was untimely*. *Bowley*, 282 Mont. at 307, 938 P.2d at 597. Moreover, in *Bowley*, the District Court was unaware that Bowley was dissatisfied with his counsel until after the court accepted Bowley's guilty plea, and even then, it failed to inquire into Bowley's dissatisfaction. *Bowley*, 282 Mont. at 307-08, 938 P.2d at 597-98. In Warclub's case, his written acknowledgment was timely, and furthermore, the District Court was aware of and had recently investigated Warclub's dissatisfaction with his attorneys. Thus, *Bowley* is inapposite.

¶34 It is undisputed that the District Court failed to ask Warclub specifically about satisfaction with his counsel during its interrogation at the change-of-plea hearing. However, the District Court had only a few days prior to this inquired into Warclub's dissatisfaction with his counsel and determined that Warclub was unable to articulate any ways in which

16

his counsel was deficient. The District Court also had before it a series of appropriate motions and briefs filed by Warclub's counsel throughout the proceedings, and Warclub's written, signed Acknowledgment of Waiver of Rights which stated that Warclub was satisfied with his counsel. Furthermore, in this particular case, Warclub's satisfaction or dissatisfaction with counsel had no bearing upon whether he understood the consequences of his plea, or whether his plea was induced by threats, misrepresentation, or an improper promise. *Brady*, 397 U.S. at 755, 90 S.Ct. at 1472, 25 L.Ed.2d at 760. While we will consider other factors that bear upon voluntariness, or that implicate good cause pursuant to § 46-16-105(2), MCA, we find none here.

¶35 Based upon the foregoing, we conclude that Warclub did not demonstrate good cause to withdraw his plea. We therefore affirm the District Court.

/S/ PATRICIA O. COTTER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE

17