DA 06-0655

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 18

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

CHARLES OSBORNE MCFARLANE,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Custer, Cause No. DC-03-25
Honorable Gary L. Day, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jim Wheelis, Chief Appellate Defender; Nicholas Miller,
Legal Intern, Helena, Montana

    For Appellee:

        Honorable Mike McGrath, Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

        Garry Bunke, County Attorney, Miles City, Montana

Submitted on Briefs: September 6, 2007

Decided: January 29, 2008

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Charles Osborne McFarlane (McFarlane) appeals from the judgment of the Sixteenth Judicial District Court, Custer County, denying his motion to withdraw his guilty plea. We affirm.

¶2 We consider the following issues on appeal:

¶3 1. Did the District Court err by denying McFarlane's motion to withdraw his guilty plea?

¶4 2. Did McFarlane's counsel for the motion to withdraw plea provide ineffective assistance of counsel by:

   a. Citing to the improper legal standard for a plea withdrawal?

   b. Failing to challenge the adequacy of the plea colloquy?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5 On August 4, 2003, the Custer County Attorney filed an information charging McFarlane with burglary, a felony, and theft, a misdemeanor. Both charges arose from McFarlane's entry into Bill Hopkins' residence on or about May 27, 2003. McFarlane was arraigned on August 19, 2003, and was represented by Wyatt Glade (Glade). Thereafter, a change of plea hearing was held on January 14, 2004, during which McFarlane pled guilty to both the burglary and the theft, pursuant to a plea agreement. In exchange for McFarlane's guilty plea, the State agreed to move to dismiss the persistent felony offender status against McFarlane. Following the court's colloquy with McFarlane, the court accepted McFarlane's guilty plea. A sentencing hearing was then set for April 6, 2004.

2

¶6 However, McFarlane failed to appear at the sentencing hearing, instead fleeing the jurisdiction. McFarlane was a fugitive for two years until arrested on warrant issued by the District Court and returned to Montana by authorities. Glade withdrew as McFarlane's attorney of record on March 30, 2006, and the court appointed John Houtz as McFarlane's new counsel. Shortly thereafter, McFarlane filed a motion to withdraw his guilty plea to the burglary charge. In support of his motion, Houtz asserted that under the three-factor *Huttinger* test, the court should grant McFarlane's motion to withdraw his guilty plea. The court held a hearing on the motion and McFarlane testified. McFarlane told the court that Glade had instructed him "to answer [the court's] questions the way [he] did to get the Judge to accept the plea." During his testimony, McFarlane also asserted that Glade knew that McFarlane possessed a key to the Hopkins' residence.

¶7 The District Court denied the motion to withdraw, determining that McFarlane's plea "was an intelligent and voluntary plea. He had an opportunity to review the plea agreement with his attorney. He said that he was satisfied with his attorney . . . . this is an opportunistic attempt at getting the best parts of [the] bargain . . . ." McFarlane appeals.

**STANDARD OF REVIEW**

¶8 We review a district court's denial of a motion to withdraw a guilty plea de novo, *State v. Warclub*, 2005 MT 149, ¶ 17, 327 Mont. 352, ¶ 17, 114 P.3d 254, ¶17, as the issue of whether a plea was entered voluntarily is a mixed question of law and fact. *Warclub*, ¶ 17. We review the underlying factual findings to determine if they are clearly erroneous. *Warclub*, ¶ 23. Findings of fact are clearly erroneous if they are unsupported

3

by substantial evidence, the court misapprehended the effect of the evidence, or review of the record convinces us that a mistake has been made. *Warclub*, ¶ 23. We then review the district court's interpretation of the law, and application of the law to the facts, for correctness. *Warclub*, ¶ 23.

## DISCUSSION

¶9 **1. Did the District Court err by denying McFarlane's motion to withdraw his guilty plea?**

¶10 McFarlane contends that his guilty plea was entered both involuntarily and unintelligently. He advances three arguments in support of his contention. First, McFarlane argues that his plea was involuntary because his attorney, Glade, rendered ineffective assistance of counsel by inadequately preparing him for the change of plea hearing.

¶11 Section 46-16-105(2), MCA, allows a court to withdraw a guilty plea and substitute a not guilty plea where good cause is shown. "Good cause" includes involuntariness of the plea, but may also include other criteria. *Warclub*, ¶ 16. In fact, we have recognized that "ineffective assistance of counsel constitutes 'good cause' for withdrawal of a guilty plea[.]" *Hans v. State*, 283 Mont. 379, 410, 942 P.2d 674, 693 (1997) (internal citations omitted). "Where a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." *Hans*, 283 Mont. at 411, 942 P.2d at 693 (internal quotations omitted). Following the *Strickland* test for ineffective assistance of counsel in

4

regard to a guilty plea, the defendant must show (1) that his counsel's advice fell outside the range of competence demanded of a criminal attorney and (2) but for counsel's deficient performance, he would not have entered a guilty plea. *Hans*, 283 Mont. at 410-11, 942 P.2d at 693.

¶12 McFarlane asserts that Glade did not adequately prepare him for the change of plea hearing, specifically arguing that Glade told him "he had to answer yes to all questions asked by the court in the change of plea hearing." McFarlane also asserts that Glade failed to inform him of the available defense of "permission" despite Glade knowing that McFarlane had a key to the Hopkins' residence. However, McFarlane makes this argument for the first time on appeal. In the District Court, McFarlane did not raise an ineffective assistance of counsel claim as a basis for withdrawal of his guilty plea. Neither the briefing in support of his motion to withdraw nor the hearing on the motion directly raises an ineffective assistance argument. While the District Court commented upon McFarlane's testimony that there "may be an ineffective assistance of counsel claim or something like that involved," the District Court was not squarely presented with the issue. We have repeatedly held that this Court considers issues presented for the first time to be untimely and will not consider them. *State v. Adgerson*, 2003 MT 284, ¶ 12, 318 Mont. 22, ¶ 12, 78 P.3d 850, ¶ 12. We refuse to consider new arguments and changes in legal theory on appeal "because it is fundamentally unfair to fault the trial court for failing to rule on an issue it was never given the opportunity to consider." *Adgerson*, ¶ 12. Accordingly, we decline to reach the merits of this ineffective assistance of counsel claim.

¶13 To be clear, we are not presented here with a separate, stand-alone ineffective assistance of counsel claim, but rather an argument that counsel's ineffectiveness impacted the voluntariness of McFarlane's plea. As McFarlane's briefing states, "[a] separate claim of ineffectiveness is not properly addressed in this appeal because . . . the record does not fully explain why [Glade] took [the] particular action[.]" We have explained that "[o]nly when the record will fully explain <u>why</u> counsel took, or failed to take, action in providing a defense for the accused may this Court review the matter on direct appeal." *State v. White*, 2001 MT 149, ¶ 20, 306 Mont. 58, ¶ 20, 30 P.3d 340, ¶ 20 (emphasis added).

¶14 Second, McFarlane argues that his plea was unintelligent because "he was not made aware of a legislatively created defense to the charge of burglary, vis-à-vis, permission." McFarlane complains that not only did his attorney fail to inform him of the permission defense, but the court's plea colloquy failed to address the "specifics" of possible defenses. Therefore, McFarlane asserts that the "complete absence of an explanation to the defendant at or before the change of plea hearing of the defense of permission . . . requires vacating the guilty plea . . . ."

¶15 However, as with his first argument, McFarlane challenges the inadequacy of the plea colloquy for the first time on appeal. We note that, while waiting to review the plea hearing transcript, McFarlane stated in his motion to withdraw that "Defendant anticipates the court's interrogation will be found to be adequate." Thereafter, McFarlane's counsel, then Houtz, did not attack the sufficiency of the plea colloquy at

the plea withdrawal hearing. Accordingly, we also decline to review this assertion because it was not presented to the District Court. *See Adgerson*, ¶ 12.

¶16 Third, McFarlane attacks the voluntariness of his plea on the ground that he did not "understand what acts amount to being guilty of [burglary]," and thus contends his guilty plea was not entered intelligently. The State responds that McFarlane's plea was "voluntarily and intelligently made" because "McFarlane knew the direct consequences of his plea" and points to several case specific considerations in support of the District Court's denial of McFarlane's motion. We review this claim under the *Brady* standard to determine if McFarlane entered his guilty plea voluntarily.

¶17 The *Brady* standard considers a guilty plea to be "voluntary only when the defendant is 'fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel . . . .'" *State v. Lone Elk*, 2005 MT 56, ¶ 21, 326 Mont. 214, ¶ 21, 108 P.3d 500, ¶ 21 (quoting *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970)); *see also Warclub*, ¶ 18 (reaffirming "our intention to use the *Brady* standard for the voluntariness of guilty pleas, as articulated in *Brady*"). "[W]e will not overturn a district court's denial of a motion to withdraw a guilty plea if the defendant was aware of the direct consequences of such a plea, and if his plea was not induced by threats, misrepresentation, or an improper promise such as a bribe." *Warclub*, ¶ 32. When determining if a defendant entered a plea voluntarily and whether a district court erred in denying a motion to withdraw a plea, we examine "case-specific considerations." These considerations include the adequacy of the district court's interrogation, the benefits obtained from a plea bargain, the

withdrawal's timeliness, and other considerations that may affect the credibility of the claims presented. *State v. Muhammad*, 2005 MT 234 ¶¶ 14, 24, 328 Mont. 397, ¶¶ 14, 24, 121 P.3d 521, ¶¶ 14, 24.

¶18 The District Court thoroughly questioned McFarlane before accepting his guilty plea. The record reveals that McFarlane expressed understanding about the charges against him, the maximum penalties for each offense, and his waiver of his right to a trial. McFarlane stated that he was making the plea on his "own free will" and was not threatened prior to making the plea. He testified that he discussed "all the consequences" of his plea with counsel and he was "satisfied with the services of [his] attorney, Mr. Glade[.]" The court also asked if McFarlane had discussed possible defenses and the concept of lesser included offenses with his attorney. McFarlane indicated that he had discussed defenses and lesser included offenses with Glade. When asked if he had permission to enter the Hopkins' residence he responded, "no." On this basis, the court accepted McFarlane's plea. Later, at the withdrawal hearing, McFarlane did not challenge his plea on the basis that he was threatened or induced to make the plea. The only argument he squarely presented was that he did not understand the consequences of his guilty plea. However, our review of the record of the change of plea hearing, along with consideration of case specific considerations discussed below, convince us otherwise.

¶19 First, McFarlane waited approximately two years before seeking withdrawal of his plea. McFarlane fled the jurisdiction after entering his guilty plea and prior to his sentencing, avoiding authorities for two years. His actions indicate an awareness of the

consequences of entering a guilty plea and an intention to avoid sentencing penalties by absconding. Moreover, as the State notes, McFarlane's criminal history includes convictions based on thirteen counts of burglary in six separate criminal proceedings spanning nearly forty years. At the plea withdrawal hearing, McFarlane testified that he had previously pled guilty to approximately seventeen felonies. McFarlane's experience with the criminal justice system, and burglary charges in particular, cast further doubt on his claims that he was unaware of the permission defense and was confused by the meaning of a guilty plea. Accordingly, McFarlane's argument that he "misunderstood" the guilty plea or was "confused" about its meaning is unpersuasive. We conclude that McFarlane understood the consequences of his plea and failed to establish good cause to support a plea withdrawal. McFarlane's guilty plea was voluntarily entered and we affirm the District Court's denial of McFarlane's motion to withdraw his plea.

¶20 **2. Did McFarlane's counsel for the motion to withdraw plea provide ineffective assistance of counsel by:**

### a. Citing to the improper legal standard for a plea withdrawal?

¶21 McFarlane's second issue is that counsel on his withdrawal motion, Houtz, rendered ineffective assistance of counsel by relying on an improper legal standard for withdrawal of a plea. The State contends that we should refuse to review this claim because the record is "silent" as to why Houtz did not present the proper legal standard.

¶22 When asserting ineffective assistance of counsel in this context, a defendant must meet the two-pronged *Strickland* test by showing: (1) that his counsel's performance fell outside the range of competence required of attorneys in criminal cases and (2) the

9

deficient performance prejudiced his case. *State v. Hendricks*, 2003 MT 223, ¶ 6, 317 Mont. 177, ¶ 6, 75 P.3d 1268, ¶ 6. With respect to the first prong, there is a "strong presumption" that counsel's actions fall within the broad scope of reasonable professional conduct. *Hendricks*, ¶ 7. The threshold inquiry to an ineffective assistance of counsel claim is whether the allegations of deficient representation can be documented and resolved from the record.

¶23 McFarlane's allegation of ineffective assistance of counsel stems from Houtz's use of the *Huttinger* test when arguing that the court should allow withdrawal of his guilty plea. We relegated formal application of the *Huttinger* test to history in our decision in *Lone Elk*, ¶ 23, and subsequently adopted the United States Supreme Court's *Brady* standard in its place. *Warclub*, ¶ 18. Accordingly, McFarlane contends that Houtz was ineffective by citing the *Huttinger* test instead of the *Brady* standard.

¶24 We have recognized the principle that "counsel's erroneous advice on a critical point 'cannot be excused as a strategic or tactical judgment, but could have sprung only from a misunderstanding of the law.'" *State v. Becker*, 2005 MT 75, ¶ 19, 326 Mont. 364, ¶ 19, 110 P.3d 1, ¶ 19 (citing *United States v. Streater*, 70 F.3d 1314, 1321 (D.C. Cir. 1995)). As the *Brady* standard is arguably more lenient to a defendant seeking plea withdrawal than the old *Huttinger* test, we cannot discern any reason why Houtz would cite the incorrect and potentially less beneficial standard, other than he failed to recognize the change in the law. Therefore, Houtz's reliance on the antiquated *Huttinger* test cannot be presumed a tactical judgment call, and we conclude that Houtz's performance fell outside the range of competence demanded.

¶25 McFarlane must also satisfy the burden of showing that Houtz's deficient performance prejudiced his case. McFarlane contends that Houtz's argument "within the confines of the *Huttinger* test" caused the District Court to consider the promptness of McFarlane's motion to withdraw, which is "irrelevant to voluntariness[.]" Because of the District Court's consideration of promptness of his motion, McFarlane argues that "there is much more than a reasonable probability that the outcome of the hearing would have been different if Houtz had made the appropriate argument regarding voluntariness."

¶26 The *Huttinger* test listed three factors for determining if the court should allow the withdrawal of a guilty plea:

> (1) the adequacy of the interrogation by the district court of the defendant's understanding of the consequence of his plea; (2) the promptness with which the defendant attempts to withdraw the previous plea; and (3) the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

*Warclub*, ¶ 19 n. 3. In contrast, the *Brady* standard focuses on the "voluntariness" of a defendant's plea. *Lone Elk*, ¶ 21. We explained in *Lone Elk*, ¶ 23, and again in *Warclub*, ¶ 19, that while the *Huttinger* test is no longer the standard, the *Huttinger* factors may nonetheless be considered when determining if the plea was voluntarily entered. In fact, "two of the criteria from the *Huttinger* test (the adequacy of colloquy and the existence of plea bargain) bear on the question of voluntariness," *Lone Elk*, ¶ 23, in addition to other case-specific considerations. Accordingly, consideration of these former *Huttinger* factors remains appropriate when determining voluntariness under the *Brady* standard. Therefore, the court did not err when considering them.

¶27 Further, it was not error for the court to consider the promptness of the motion. We have clearly stated that case specific considerations, such as timeliness and reaping the benefit of the bargain, remain relevant. *See Muhammad* ¶ 24; *Warclub* ¶ 19. The court here considered the totality of the circumstances, including the plea colloquy, the plea agreement, timeliness, and McFarlane's absconding from justice, and concluded that McFarlane's motion was little more than "an opportunistic attempt" to obtain the benefit of the plea agreement without any of the consequences of pleading guilty.

¶28 Moreover, we have already determined, under Issue I herein, that McFarlane's plea was entered voluntarily based upon an analysis of voluntariness and case-specific considerations under the *Brady* standard. Therefore, it is clear that despite Houtz's improper reliance on *Huttinger*, the outcome would have been the same under the appropriately cited authority. As such, McFarlane's ineffective assistance of counsel claim does not meet the second prong of the *Strickland* test and fails.

### b. Failing to challenge the adequacy of the plea colloquy?

¶29 McFarlane also argues that Houtz was ineffective because, as we noted above, he did not challenge the plea colloquy within the motion for plea withdrawal. McFarlane asserts that the District Court's colloquy was flawed by a failure to enumerate the lesser included offenses of which McFarlane could have been convicted had he proceeded to trial.

¶30 During the plea colloquy, the court explained the possibility of lesser included offenses as follows:

THE COURT: Now there is this concept of lesser included offenses that may come into play here. I don't know that there are any under these circumstances, but if you went to trial there is a possibility that a jury might not be able to reach a verdict or might find you not guilty of the charged offense, but instead find you guilty of a lesser included offense. An offense with a lesser penalty. That's usually a benefit to a Defendant—that possibility at trial, but because there won't be a trial[,] that lesser included offense possibility won't be considered. Do you understand that?

MR. MCFARLANE: Yes, sir.

Although not enumerating lesser included offenses, the court nonetheless clearly informed McFarlane that he would lose the usually advantageous opportunity to be convicted of any lesser included offenses by entering a guilty plea, and McFarlane acknowledged the loss of that opportunity. Further, while McFarlane complains that this colloquy is insufficient, he fails to demonstrate any lesser included offenses to burglary which would have been applicable under the circumstances of his charge. A court has no duty to inform McFarlane about the possibility of lesser included offenses if such a possibility does not legally exist, *see State v. Thee*, 2001 MT 294, ¶ 24, 307 Mont. 450, ¶ 24, 37 P.3d 741, ¶ 24 (holding that the ineffective assistance of counsel claim fails because there is no duty to inform a client about conviction at trial of a lesser included offense when such a possibility is nonexistent), and thus, McFarlane fails to demonstrate any prejudice which could have arisen from this colloquy. Accordingly, McFarlane's argument that Houtz provided ineffective assistance of counsel by not challenging the sufficiency of the plea colloquy is without merit.

¶31 Affirmed.

/S/ JIM RICE

13

We concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ JOHN WARNER