DA 11-0010

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 214

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

HECTOR FELIPE VALDEZ-MENDOZA,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Fourteenth Judicial District,
In and For the County of Musselshell, Cause No. DC-09-05
Honorable Randal I. Spaulding, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Joslyn Hunt, Chief Appellate Defender; Shiloh Hernandez,
Assistant Appellate Defender, Helena, Montana

      For Appellee:

          Steve Bullock, Montana Attorney General; Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          Kent Sipe, Musselshell County Attorney, Roundup, Montana

Submitted on Briefs:  August 10, 2011

Decided:  August 30, 2011

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1     Hector Valdez-Mendoza appeals from an order of the District Court, Fourteenth Judicial District, Musselshell County, denying his motion to withdraw his guilty plea. We reverse.

ISSUE

¶2     The only issue is whether the District Court erred when it denied Valdez-Mendoza's motion to withdraw his guilty plea.

BACKGROUND

¶3     On March 26, 2009, Valdez-Mendoza was charged with one count of sexual intercourse without consent, § 45-5-503, MCA, and one count of unlawful transactions with children, § 45-5-623, MCA.  On, April 9, 2009, Attorney Kris Copenhaver replaced Valdez-Mendoza's original counsel.  Trial was scheduled for October 19, 2009.

¶4     On July 29, 2009, Copenhaver filed a "Motion to Compel Discovery."  On September 23, Copenhaver moved to suppress evidence collected on the night of the alleged offenses.  On the same day, she also filed a "Motion for Change of Venue."  In her brief, Copenhaver asserted:

> In the case at hand, the complaining witness is a young, Caucasian girl; she's a lifetime resident of a close-knit community, Roundup, Montana. Hector Valdez is an older, Hispanic man from another country.  When taken together it is reasonable to conclude that the accused cannot have a fair trial in Musselshell County.

Due to the briefing schedule, the trial date was re-set to November 4, 2009. On October 21, the District Court denied both the Motion to Suppress and Motion for Change of Venue.

¶5 On October 27, 2009, Copenhaver filed proposed jury instructions, a motion in limine and a "Motion for Supplemental Jury Questionnaire, Individual Voir Dire and Additional time for Voir Dire." On November 2, 2009, the State filed a "Notice of Additional Discovery" regarding DNA evidence. On November 3, Copenhaver moved to exclude the DNA evidence and requested the State be sanctioned. She explicitly opposed any continuance of the trial. The District Court, however, continued the trial date, rather than exclude the DNA evidence. Trial was re-set for February 1, 2010.

¶6 In response, on December 7, 2009, Copenhaver filed a "Motion to dismiss for Violation of the right to Speedy Trial." On January 15, the District Court denied the motion to dismiss. The District Court acknowledged that prejudice was presumed because "324 days will have elapsed since the Defendant was arrested." Although the District Court attributed 308 days of delay to the State, 219 days were "institutional delay." The District Court found that Valdez-Mendoza (1) had not suffered oppressive pretrial incarceration or "undue anxiety," (2) could not plausibly argue that his incarceration had "disrupted his life as a fugitive," and (3) Valdez-Mendoza's defense was not impaired because "[t]he fact that the witnesses are no longer available appears to be due to the fact that most of them were not from the Roundup community to begin with, not the passage of the time awaiting trial."

¶7     On January 29, 2010, Valdez-Mendoza agreed to plead guilty to one count of sexual assault, § 45-5-502, MCA, in exchange for dismissal of the sexual intercourse without consent count.  He signed an "Acknowledgement of Waiver of Rights by Plea of Guilty."  In the document, Valdez-Mendoza acknowledged he fully understood that he was pleading guilty, and he had not been promised leniency.  Furthermore, he agreed that Copenhaver had fully advised him of his rights, he believed she was competent, confirmed that she had reviewed the legal issues and defenses with him, and he approved of the services and legal representation she provided.

¶8     On the same day, Valdez-Mendoza appeared before the District Court and entered a plea of guilty to sexual assault.  He confirmed that Copenhaver had gone over the agreement with him and explained the terms, and he understood the agreement.  He acknowledged that he was satisfied with Copenhaver's legal representation, he had enough time to meet with her to discuss his case, and he understood the potential legal ramifications of proceeding to trial.[1]  Finally, he stated that no party had threatened or promised him with anything in exchange for his plea of guilty.

¶9     On March 24, 2010, prior to sentencing, Valdez-Mendoza sent a letter to the District Court and requested new counsel.  The District Court ordered a hearing.  On April 28, 2010, Valdez-Mendoza appeared at the hearing with his attorney.  Copenhaver informed the District Court that there had been a "total breakdown in communication"

---

[1] On appeal Valdez-Mendoza asserts that Copenhaver rendered ineffective assistance of counsel, resulting in good cause for him to withdraw his guilty plea.  While this argument was raised in passing, it was neither briefed nor established below, and thus is not addressed on appeal.

between herself and Valdez-Mendoza. On May 3, 2010, the District Court permitted Copenhaver to withdraw and ordered the Office of the State Public Defender to appoint substitute counsel. On July 23, 2010, Valdez-Mendoza's new counsel filed a "Motion to Withdraw Plea of Guilty." In part, Valdez-Mendoza asserted he had good cause to withdraw his guilty plea because Copenhaver, "convinced the defendant that he could not get a fair trial in Roundup . . . ."

¶10 On August 19, 2010, the District Court held a hearing on the motion to withdraw the guilty plea. Both Copenhaver and Valdez-Mendoza testified. Copenhaver explained that she believed Valdez-Mendoza could not get a fair trial in Musselshell County because he was not an American national. She testified that she shared this belief with Valdez-Mendoza and they discussed the issue many times. Copenhaver acknowledged Valdez-Mendoza had voiced concern that no one in Roundup would give him a fair trial. Copenhaver testified that she did not try to dissuade this belief, because to a certain extent she agreed. Valdez-Mendoza testified "she told me I was not going to get a fair trial in Roundup and that if it was her, if she was me, she would have took [sic] the plea bargain. . . . I took that plea bargain because for what she told me."

¶11 On August 27, 2010, the District Court denied Valdez-Mendoza's motion to withdraw his guilty plea. The District Court concluded that "[b]eyond the mere conclusory and self-serving statement, the defense has offered no objective proof to demonstrate that or how Ms. Copenhaver allegedly 'convinced' the Defendant he would not receive a fair trial when the Defendant himself had apparent concerns." On October 27, 2010, the District Court sentenced Valdez-Mendoza to 10 years in the Montana State

5

Prison, with parole eligibility contingent on completion of sexual offender treatment. The District Court classified Valdez-Mendoza as a level 2 sexual offender. Valdez-Mendoza appealed to this Court.

## STANDARD OF REVIEW

¶12 "This Court reviews a district court's denial of a motion to withdraw a guilty plea de novo because whether a plea was entered voluntarily is a mixed question of law and fact." *State v. Tyler*, 2009 MT 75, ¶ 10, 349 Mont. 461, 204 P.3d 685.

## DISCUSSION

¶13 *Whether the District Court erred when it denied Valdez-Mendoza's motion to withdraw his guilty plea.*

¶14 A district court may allow a defendant to withdraw a guilty plea for good cause. Section 46-16-105(2), MCA; *State v. McFarlane*, 2008 MT 18, ¶ 11, 341 Mont. 166, 176 P.3d 1057. Good cause includes involuntariness, but may exist for other reasons as well. *State v. Warclub*, 2005 MT 149, ¶ 16, 327 Mont. 352, 114 P.3d 254. Ineffective assistance of counsel can constitute good cause to withdraw a guilty plea. *McFarlane*, ¶ 11. Additionally, discovery of new evidence can constitute good cause to allow a defendant to withdraw a guilty plea. *Tyler*, ¶ 12. On the other hand, a post-plea change in the law does not necessarily constitute good cause to withdraw a plea of guilty. *State v. Andrews*, 2010 MT 154, ¶ 15, 357 Mont. 52, 236 P.3d 574; *State v. Ferris*, 2010 MT 252, ¶ 9, 358 Mont. 244, 244 P.3d 732.

¶15 In the case at hand, the gravamen of Valdez-Mendoza's claim is that his plea was not voluntary. He asserts that he was induced to plead guilty by Copenhaver's

assessment of whether he would receive a fair trial; that the jury would not believe him, "because of who I am." We conclude that Valdez-Mendoza had good cause to withdraw his guilty plea. It is uncontested that Copenhaver believed Valdez-Mendoza could not get a fair trial in Roundup. She shared this belief with Valdez-Mendoza on numerous occasions, including the day he pled guilty. Copenhaver testified that her belief was based on nothing more than personal perceptions of racial dynamics and conversations with some friends who worked in Roundup. Furthermore, Copenhaver testified she made no attempt to assuage Valdez-Mendoza's fear of an unfair trial, because to an extent she agreed with him. Taken together, these facts establish good cause to allow Valdez-Mendoza to withdraw his guilty plea.

¶16 There is a clear distinction between advising a client that they cannot or are unlikely to prevail at trial, and telling a client that they cannot receive a fair trial based on race or ethnicity. The former properly falls within defense counsel's duty to their client. *State v. Thee*, 2001 MT 294, ¶ 13, 307 Mont. 450, 37 P.3d 741 (*overruled on other grounds*, *Whitlow v. State*, 2008 MT 140, ¶ 18, 343 Mont. 90, 183 P.3d 861). (Counsel's candid assessment of legal circumstances may have caused anxiety or pain, but did not "induce" defendant to plead guilty, as counsel had a duty to "inform client of the elements of the offense, the possible punishment, and advisability of a plea agreement.") The latter, on the other hand, constitutes a misrepresentation, essentially informing a defendant that they are not entitled to either an impartial jury or the presumption of innocence as guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and Article II, § 24 of the Montana Constitution.

7

¶17    Valdez-Mendoza's conviction is reversed. We remand to the District Court with an order to grant Valdez-Mendoza's motion to withdraw his plea of guilty to sexual assault.

/S/ MIKE McGRATH

We concur:

/S/ MICHAEL E WHEAT
/S/ BETH BAKER
/S/ BRIAN MORRIS

Justice Patricia O. Cotter concurs.

¶18    I concur in the Court's decision to reverse and remand with instructions to grant Valdez-Mendoza's motion to withdraw his plea of guilty. However, I would premise the reversal upon a combination of counsel's failure to adequately investigate the case and secure the testimony of witnesses, and her advice to him that he could not secure a fair trial.

¶19    The Court correctly notes that Valdez-Mendoza's motion to withdraw his guilty plea did not contain allegations that counsel rendered ineffective assistance by failing to adequately investigate the case and secure the testimony of exculpatory witnesses. However, this argument was front and center at the hearing on the motion, and both

8

parties address the issue on appeal. I have therefore considered the argument and factored it into my decision to reverse.

¶20 Valdez-Mendoza has always maintained his innocence, claiming that he and the victim had had an ongoing relationship and that the sex between them was consensual. He asked his counsel—while he sat in jail—to interview other witnesses who were on the scene the night of the party where the rape allegedly occurred, as he believed they would contradict the victim's story. At the hearing, new counsel for Valdez-Mendoza examined his former attorney regarding her investigation. She conceded that she did not interview any witnesses other than the victim and her mother, despite the fact that the deputy who investigated the alleged rape was told by both the victim's mother and the victim's sister that they did not believe the victim was actually raped. Moreover, counsel conceded she did not even review the prosecutor's file until five months after Valdez-Mendoza was charged, and by the time she did so, the witnesses had left Roundup. It is also notable that counsel testified at the hearing that she believed the sex had actually been consensual, and that Valdez-Mendoza had "a pretty strong defense case." Yet, she actively encouraged him to plead guilty on the premise he would not get a fair trial. It is this combination of factors—and the case of *Thomas v. Lockhart*, 738 F.2d 304 (8th Cir. 1984)—that convinces me of the correctness of the Court's decision to reverse.

¶21 In *Thomas*, the Court of Appeals upheld a district court decision to grant Thomas's petition for a writ of habeas corpus. Thomas, a black man, had been accused of raping a white woman. His attorney, without performing any investigation, told Thomas he had to plead guilty due to the racial overtones of the case. Thomas did so and later sought

9

habeas relief, contending his guilty plea was not voluntary. In upholding the district court, the court on appeal observed that even though Thomas maintained his innocence and supplied his lawyer with the names of alibi witnesses, his lawyer made no attempt to contact them, nor did counsel advise Thomas of the presumption of innocence and the state's burden of proof. He simply told him that a jury would not believe a black man's testimony over that of a white woman. These facts, and others, convinced the court that such acts and omissions on the part of counsel prevented Thomas from entering a knowing, voluntary and intelligent plea. *Thomas*, 738 F.2d at 307. Valdez-Mendoza argues that this case is on point, and the State wholly fails to address or refute his argument. I agree with Valdez-Mendoza. Counsel's failure to investigate a "pretty strong defense case," when combined with counsel's strong suggestion that Valdez-Mendoza should plead guilty because he would not be believed, prevented Valdez-Mendoza from entering a knowing, voluntary and intelligent guilty plea.

¶22 For the foregoing reasons, I concur in the Court's Opinion.


/S/ PATRICIA COTTER