No. 04-552

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 13

STATE OF MONTANA,

       Plaintiff and Respondent,

   v.

RODNEY LEE CHASE,

       Defendant and Appellant.

APPEAL FROM:    The District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 2002-569,
Honorable Russell C. Fagg, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Chief Appellate Defender, Helena, Montana

       For Respondent:

              Honorable Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

              Dennis Paxinos, County Attorney; Rodney Souza, Deputy
County Attorney, Billings, Montana

              Submitted on Briefs:  June 21, 2005

              Decided:  January 18, 2006

Filed:

_____
              Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Appellant Rodney Lee Chase (Chase) pled guilty to DUI *per se* on January 2, 2003, but thereafter twice moved to withdraw the plea. Both motions were denied by the Thirteenth Judicial District Court. Chase appeals from the District Court's second order, entered June 24, 2004, denying Chase's motion to withdraw his guilty plea. We reverse.

¶2 We consider the following issue on appeal:

¶3 Did the District Court err in denying the defendant's motion to withdraw his guilty plea?

BACKGROUND

¶4 Sitting in a pickup truck on the banks of the Yellowstone River on the evening of July 26, 2002, and intending to stay overnight, Chase and his twenty-two-year-old son were talking and drinking beer when they were approached by Yellowstone County sheriff's deputies. The truck was parked at the end of an unimproved railroad service road which was closed to the public. The railroad had posted "No Trespassing" signs, which were nearby and visible.

¶5 The deputies arrested Chase and charged him with Driving Under the Influence, a felony, and, alternatively, Operation of a Noncommercial Vehicle by Person With an Alcohol Concentration of .10 or more (DUI *per se*), also a felony. The District Court appointed the Yellowstone County Public Defender's office to represent Chase, and that office assigned Solomon Neuhardt (Neuhardt) to Chase's case. Neuhardt, after meeting with Chase, filed a motion to dismiss the charges on the grounds that Chase was not arrested on

2

a "way of the state open to the public." Later, Neuhardt withdrew the motion without Chase's knowledge.

¶6      As Chase's case progressed toward trial, disagreement between Chase and Neuhardt became commonplace. Most distressing to Chase was his confusion or disagreement regarding (1) the effect of a guilty plea, (2) his potential status as a persistent felony offender, and (3) Neuhardt's unilateral withdrawal of the motion to dismiss. Chase brought the issues to the attention of the District Court, which concluded that Chase's concerns were "seemingly substantial" and therefore held a hearing to evaluate Neuhardt's effectiveness and to consider Chase's request for new counsel.

¶7      At the January 2, 2003, hearing, the District Court questioned Chase extensively regarding his dissatisfaction with Neuhardt. Neuhardt's withdrawal of the motion to dismiss on the "way of the state open to the public" issue was at the center of that questioning. Chase, as he had been from the beginning, was convinced that the DUI charge was inappropriate since he had been arrested on unimproved private property. After investigating the arrest scene, however, Neuhardt had reached a different conclusion, and believed the site to be a public fishing access. Consequently, Neuhardt withdrew the motion to dismiss, although he failed to notify Chase of the withdrawal until after it had occurred. Believing the private property status of the arrest scene his best defense, Chase could not understand this action and was angered by what he believed was Neuhardt's secret withdrawal of the motion.

¶8     Near the close of the hearing, the District Court expressed its approval of Neuhardt's actions regarding the motion, stating:

> There's no question in my mind that that issue would have failed.  There was no grounds for a motion to dismiss based upon the fact that you weren't on a way open to the state–public way open to the state.  I think Mr. Neuhardt made a good decision not to file the brief in support of that motion.  I don't think he had grounds to do so.

The court also opined that defense counsel's work had been above and beyond that expected in a DUI case, and denied Chase's request for new counsel.

¶9     In response, Chase resignedly expressed his desire to enter a guilty plea, stating to the District Court:

> If you're not going to [provide new counsel], I might as well go ahead and plead guilty and get sentenced to the pen and get on this with this [sic].  I can see where it's headed.

The court, obviously attempting to quell Chase's frustration, responded with this explanation:

> Mr. Chase, if you think you have some defenses, of course you can bring them to a jury.  *I believe your attorney is correct, I don't see any legal defenses that would get you out of this*.  There is the possibility that the State can't meet it's [sic] burden of proof, and you have the right to test that.  [Emphasis added.]

Chase replied "I don't see no sense in a trial" and again offered to plead guilty.

¶10     The court then called a recess in the proceeding to allow Chase to speak with Neuhardt.  After the recess, Chase tendered a signed Acknowledgment of Rights by Plea of Guilty form, and affirmed his desire to plead guilty.  Thereafter, the court questioned Chase again, this time regarding his desire to plead guilty.  While the colloquy was thorough, it is

clear that Chase still believed that the location of his arrest was a viable defense to the DUI charge, and specifically, he was unwavering in his criticism of Neuhardt's withdrawal of the motion to dismiss on the "public way" issue, as the following exchange exemplifies:

> THE COURT: Obviously you have had concern about this because we just had a Finley hearing,[1] but I thought that he did a good job. I don't want my impressions to change yours. Are you truly satisfied with the investigation he's done in this case, with the time he spent with you on this case, and with his advice given to you?
>
> [CHASE]: No.
>
> THE COURT: Okay. Then what's the concern?
>
> CHASE: Him and me just have a disagreement on the private property issue, because there ain't no fishing access down there. The fishing access is on the other side of the river.

Pursuing testimony which would support acceptance of the guilty plea, the court also had trouble eliciting an admission by Chase that he was on a "way of the state open to the public," as the following exchange exemplifies:

> THE COURT: So you said in the previous hearing that we just had, you think you had a potential defense of a way open to the public; is that correct?
>
> CHASE: Well, when I went down there, what I knew of the DUI laws, if I had known enough, and went down, I wouldn't get one because we were going to stay there all night and not be driving. The cop come down. That's the only reason.

---

[1]A district court must undertake review of a defendant's claims of ineffective assistance of counsel when the claims are "seemingly substantial." *State v. Gallagher*, 1998 MT 70, ¶ 15, 288 Mont. 180, ¶ 15, 955 P.3d 1371, ¶ 15. The District Court referred to this as a "Finley" hearing, a reference to *State v. Finley* (1996), 276 Mont. 126, 915 P.2d 20, which also addressed these hearings, and which was partially overruled by *State v. Gallagher (Gallagher II),* 2001 MT 39, ¶ 21, 304 Mont. 215, ¶ 21, 19 P.3d 817, ¶ 21.

THE COURT: You were on a private road, apparently at some sort of fishing access by the Yellowstone River?

CHASE: They say a fishing access, but Burlington said it's not. Apparently that don't get brought up.

THE COURT: You were on a private road owned by Burlington Northern; is that correct?

CHASE: Yes.

THE COURT: Apparently leased to Montana Rail Link?

CHASE: Yeah.

THE COURT: Do you guys agree it was a fishing access, or not?

CHASE: Well, whether I disagree or not apparently ain't the point.

THE COURT: Do you believe at this time, this juncture, that you were on a public road open to the public, even though it was a private road, but was open to the public, would you agree with that?

CHASE: Yeah.

The court ultimately accepted Chase's guilty plea.

¶11    About a month later, on February 11, 2003, Neuhardt filed a motion to withdraw plea on behalf of Chase. Though Neuhardt did not support the motion with briefing or argument, the District Court again questioned Chase about the matter. Chase told the court that his guilty plea was the result of his confusion, and reiterated his belief that he had defenses to the DUI charge. Chase also affirmed his dissatisfaction with Neuhardt, and again requested new counsel. The court denied Chase's request for new counsel and his motion to withdraw the guilty plea. Thereafter, the court sentenced Chase to ten years in prison with five years suspended.

6

¶12 On February 12, 2004, Chase requested appointment of counsel to further his efforts to withdraw his guilty plea. The District Court granted the request on March 10, 2004, and appointed the Appellate Defenders Office to represent Chase. That office, on behalf of Chase, moved for withdrawal of Chase's guilty plea. Upon review, the District Court issued an extensive order denying the motion, concluding that its plea colloquy with Chase was adequate and that a basis for withdrawal of the plea did not exist. Chase appeals.

## STANDARD OF REVIEW

¶13 On a denial of a motion to withdraw a plea, this Court reviews a district court's findings of fact to determine if they are clearly erroneous, and the court's conclusions of law to determine if they are correct. *State v. Warclub*, 2005 MT 149, ¶ 24, 327 Mont. 352, ¶ 24, 114 P.3d 254, ¶ 24. A defendant's guilty plea must be voluntary, knowing, and intelligent. *State v. Radi* (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206; *citing North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. The question of a plea's voluntariness is a mixed question of law and fact, and we review such questions *de novo*, determining whether the district court's holding was correct. *Warclub*, ¶ 24.

## DISCUSSION

***Did the District Court err in denying the defendant's motion to withdraw his guilty plea?***

¶14 Section 46-16-105(2), MCA (2001), permits a defendant to withdraw a guilty plea, before or after entry of judgment, if "good cause" is shown. Section 46-16-105(2), MCA (2001). The involuntariness of a plea constitutes "good cause" under § 46-16-105(2), MCA (2001). *State v. Lone Elk*, 2005 MT 56, ¶ 19, 326 Mont. 214, ¶ 19, 108 P.3d 500, ¶ 19.

7

¶15 The question presented here is whether Chase's January 2, 2003 plea of guilty was knowingly, intelligently and voluntarily entered. *See Warclub*, ¶¶ 17-18; *see also State v. Favi*, 2005 MT 288, ¶ 12, 329 Mont. 273, ¶ 12, 124 P.3d 164, ¶ 12. As we stated in *State v. Ereth*, 1998 MT 197, ¶ 27, 290 Mont. 294, ¶ 27, 964 P.2d 26, ¶ 27, "[t]his Court will deem a guilty plea involuntary where it appears that the defendant was laboring under such a strong inducement, fundamental mistake, or serious mental condition that the possibility exists that [h]e may have plead guilty to a crime of which [h]e is innocent." *Ereth*, ¶ 27 (internal citations omitted); *see also State v. Pelke* (1964), 143 Mont. 262, 271, 389 P.2d 164, 169.

¶16 Convinced that he had been arrested on private property, thereby potentially negating a required element of his DUI charge, Chase disputed Neuhardt's conclusion that he had been on a "way of the state open to the public" when arrested. Neuhardt believed the arrest scene was a public fishing access, but Chase believed it was not. However, in light of the District Court's apparent agreement with Neuhardt, and the manner in which the issue was explained, Chase pled guilty under a belief that the "public way" defense was either not valid or could not be further pursued.

¶17 There is information in the record which provided a basis for Chase's belief in this defense. There was no dispute that the arrest site was private property, and an affidavit by Pete Lawrenson, Chief of Security and Safety for Montana Rail Link, indicated that, "THE PUBLIC IS NOT ALLOWED ON THE PROPERTY" (emphasis in original). "No Trespassing" signs were posted at the site, and area maps noted that the area was private.

Law enforcement personnel were well aware that the area was closed to the public. While defense counsel visited the scene, neither railroad and nor law enforcement officials were consulted regarding the status of the property. When asked why railroad officials were never contacted regarding the property, a defense investigator gave the curious response that Chase's daughter had never given them the names and phone numbers of the officials.

¶18    We reach no conclusion here regarding whether Chase was on "a way of this state open to the public," and likewise decline to take up the State's argument that the District Court's analysis of the issue was proper under *State v. Weis* (1997), 285 Mont. 41, 945 P.2d 900. As the District Court correctly noted in its order denying Chase's motion to withdraw plea, the public way issue "is not the real issue before the Court today," but, rather, the issue is Chase's understanding when he entered the plea. The record information about the investigation, however, serves to demonstrate that there was a legitimate basis for Chase's belief that this defense had not been adequately pursued, giving rise to uncertainty about his guilt.

¶19    A significant part of the voluntariness inquiry is an evaluation of the court's plea colloquy with the defendant, the purpose of which is to ensure that the defendant had been well advised of his options and the potential consequences of his plea. *Ereth*, ¶ 27; *see also Brady v. United States* (1970), 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747, 760. While the District Court thoroughly questioned Chase multiple times regarding his counsel's performance and his desire to plea guilty, the Court nevertheless made comments which, under the circumstances, appear to have unintentionally helped to prompt a guilty plea from

9

Chase which was not knowing and intelligent. Specifically, Chase appeared to lack understanding about the distinction between raising the "public way" issue as a legal defense and raising it as a factual defense. First, with regard to Neuhardt's withdrawal of the motion to dismiss on the "public way" issue, the court stated:

> There's no question in my mind that that issue would have failed. There was no grounds for a motion to dismiss based upon the fact that you weren't on a way open to the state – public way open to the state. I think Mr. Neuhardt made a good decision not to file the brief in support of that motion.

Then, after Chase expressed resignation that "I can see where it's headed," the court added:

> Mr. Chase, if you think you have some defenses, of course you can bring them to a jury. I believe your attorney is correct, I don't see any legal defenses that would get you out of this. There is the possibility that the State can't meet it's [sic] burden of proof, and you have the right to test that.

While the court may have been correct in stating there were no legal defenses as a matter of law, it is problematic that the court confidently expressed its view on an issue which could also have been tested factually before a jury. Clearly, it was not explained to Chase by the Court that the "public way" issue he felt strongly about, while not constituting a legal defense to the charge, was yet available as factual defense which he could raise at trial. From our review of the record, it appears that Chase believed the issue was entirely lost, and then pled guilty based upon that incorrect understanding, evident from the uncertain exchanges during the plea colloquy:

> THE COURT: You were on a private road, apparently at some sort of fishing access by the Yellowstone River?
>
> CHASE: They say a fishing access, but Burlington said it's not. Apparently that don't get brought up.

10

. . . .

THE COURT: Do you guys agree it was a fishing access, or not?

CHASE: Well, whether I disagree or not apparently ain't the point.

¶20 The conclusion that Chase pled guilty under the mistaken impression that he had entirely lost his "public way" defense is further bolstered by defense counsel's testimony at the hearing. When asked whether he had advised Chase that, even if a motion to dismiss on the "public way" issue was not pursued, the issue could still be raised at trial, defense counsel responded, "I don't remember discussing that with him." Thus, there is no evidence that Chase had been advised or was aware of this important distinction.

¶21 As a result, we conclude that Chase did not enter his plea knowingly and intelligently. Rather, it appears he entered the plea on the basis of a fundamental misunderstanding which he held regarding the availability of his "public way" defense. We therefore reverse the District Court's denial of the motion to withdraw guilty plea.

¶22 Reversed and remanded for proceedings consistent with this opinion.


/S/ JIM RICE

We concur:



/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS