FILED

10/06/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0465

DA 21-0465

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 188

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

THOMAS RALPH BRISTOW,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC 2019-316
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Carolyn Gibadlo, Assistant Appellate
Defender, Missoula, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Katie F. Schulz, Assistant
Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Helena, Montana

Submitted on Briefs:  August 2, 2023

Decided:  October 6, 2023

Filed:

_____
                Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Thomas Bristow (Bristow) appeals from the First Judicial District Court's Judgment and Commitment issued July 20, 2021. The District Court sentenced Bristow to 70 years in Montana State Prison for deliberate homicide, a felony, in violation of § 45-5-102(1)(a), MCA.

¶2 We restate the issues on appeal as follows:

*1. Whether Bristow's trial attorney provided ineffective assistance of counsel when he advised Bristow, and the District Court, that mitigated deliberate homicide was not a lesser included offense of deliberate homicide.*

*2. Did the District Court err when it concluded the State's offer of proof provided sufficient evidence to accept Bristow's Alford plea?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Bristow was charged with deliberate homicide for killing Cory Housel (Housel). As this case did not go to trial, the facts discussed are based on statements made at Bristow's plea and sentencing hearings. Bristow and Housel were close friends—Bristow referred to Housel as a son. On June 30, 2019, Bristow and Housel had a falling out because people kept showing up to Bristow's residence claiming Housel stole their drug money. On this same day, Housel invited Steven Yahne (Yahne) and Tricia Werner (Werner) over to Bristow's shop in an attempt to smooth over one of these disputes. Prior to their arrival, Housel arrived in his truck to retrieve some of his property, Bristow saw he had a pistol on the seat of the vehicle and took it from Housel.

¶4 When Yahne and Werner arrived, Bristow answered the door and still had the gun in his hand. While Housel moved some of his belongings from the inside of Bristow's

2

workshop to his truck outside, Bristow talked with Yahne and Werner. Housel yelled out to them to stop talking about him, and if they had something to say about him, they could say it directly to him. Bristow went over to Housel, and they got into a verbal altercation. Bristow dry fired the pistol towards the ground. Then, Bristow racked a bullet into the chamber, and as he raised it, it discharged striking Housel in the head, killing him. The parties dispute the intentionality of Bristow's discharging the gun. Bristow claims he only intended to shoot warning shots into the air, but as he raised the gun, it accidentally went off. The State, however, charged Bristow with deliberate homicide—asserting Bristow purposely or knowingly caused Housel's death.

¶5 Immediately after Bristow shot Housel, Yahne and Werner fled the scene. Bristow called them and related to them that they could split up Housel's belongings if they kept quiet. Yahne and Werner reported the incident to police. Officer Ward (Ward) showed up to Bristow's residence the next morning. According to Ward, Bristow denied everything and lied as to his whereabouts at the time of the shooting. Ultimately, investigators discovered Bristow had wrapped Housel's body in a tarp and disposed of it on a mountainside 20 miles away.

¶6 Bristow was arrested and charged with committing deliberate homicide. He entered into a plea agreement with the State whereby he agreed to enter an *Alford* plea[1] to deliberate

---

[1] An *Alford* plea allows a defendant to enter a guilty plea without acknowledging his guilt. The U.S. Supreme Court held "the Constitution does not bar imposition of a prison sentence upon an accused who is unwilling expressly to admit his guilt but who, faced with grim alternatives, is willing to waive his [right to] trial and accept the sentence." *North Carolina v. Alford*, 400 U.S. 25, 36, 91 S. Ct. 160, 167. The Montana Legislature codified *Alford* in § 46-12-212(2), MCA.

homicide in exchange for the State dropping the additional counts of tampering with evidence and criminal possession of dangerous drugs. At his change of plea hearing, Bristow's counsel advised that Bristow agreed he caused Housel's death but the parties could not agree as to whether it was deliberate, negligent, or mitigated. As such, they agreed to the *Alford* plea to put the sentencing in the court's hands to address the negligent or mitigated aspects of the case. The court then addressed the negligent and mitigated aspects by explaining to Bristow that if he went to trial, his attorney would offer jury instructions on the lesser included offenses of mitigated deliberate homicide and negligent homicide. The District Court explained:

> [I]f you go to trial, you might be found guilty of a lesser-included offense . . . [Y]our attorneys would offer jury instructions on the lesser included offenses of mitigated deliberate homicide and negligent homicide. Do you understand that by pleading guilty you are waiving these rights?

Bristow then acknowledged he understood he was waiving these rights. The court further specifically advised Bristow that with an *Alford* plea:

> essentially . . . you believe that, in the event you went to trial, there would be sufficient evidence that the jury may find you guilty of mitigated deliberate homicide or negligent homicide. And you're willing to submit yourself to the court's sentencing authority *for purposes of sentencing for the deliberate homicide*.

(Emphasis added.) Bristow acknowledged he had seen and had the opportunity to review all discovery—forensic, toxicology, autopsy, police reports, and law enforcement investigative reports. Bristow further acknowledged there was a likelihood that a jury, upon review of this evidence at trial, could find him guilty of deliberate homicide and

acknowledged he was submitting himself to the court's sentencing authority to sentence for commission of a deliberate homicide.

¶7 Bristow then entered an *Alford* plea, and the State made a lengthy offer of proof detailing the dispute between Bristow and Housel; the eye witness accounts of Yahne and Werner and two other unnamed individuals[2] present at the scene; the way in which the eye witness accounts were consistent with the forensic analysis of the gunshot wound to Housel's head and the recovered bullet; the finding of the tarp containing Housel's blood at Bristow's place; Bristow's attempt at covering the evidence, disposing of the body, and the gun; Bristow's initial statements to law enforcement in which he asserted he was not present at Housel's death; and his later admission of being present. After the State's offer of proof, the District Court provided Bristow the opportunity to correct or add to the offer made by the State. Bristow made no corrections or additions and did not object to the sufficiency of the State's offer of proof. The court then accepted Bristow's *Alford* plea.

¶8 At sentencing, Officer Ward testified as to his investigation and initial contact with Bristow. Specifically, he noted that Bristow initially denied knowing what happened, that Bristow never expressed it was an accident, and that Bristow's statements were not consistent with the evidence at the scene. Ward reported that, despite Bristow's admission of causing Housel's death, Bristow never identified the whereabouts of the gun. He testified that there was a couple from Butte also at the scene, and that their statements were

---

[2] These individuals were not identified by name as they feared for their safety.

5

consistent with the information provided by Yahne and Werner. When Ward confronted Bristow with statements of these witnesses, Bristow's response was that they were incredible as he would not have left witnesses—implying that he would have killed them had they witnessed the shooting. Ward further testified to the elaborate clean-up—raking, burning evidence, wrapping Housel in a tarp and putting him in a garbage can, dumping his body 20 miles away on a mountainside, and moving Housel's truck to a separate location—all occurring before officers arrived at the scene the next morning.

¶9 In response, Bristow offered a statement in which he asserted he got into a verbal altercation with Housel and the gun went off. He claimed the gun had a sensitive trigger and further asserted he was extremely high on dope and did not deliberately kill Housel. The State advocated for a 100-year sentence, asserting such to be appropriate given Bristow's extensive criminal history beginning at age 16 and continuing to the present. The State again pointed out the forensic evidence was inconsistent with Bristow's rendition and the information previously provided in the State's offer of proof at the plea change hearing. Defense counsel advocated for a 30-year sentence, pointing out Bristow's last violent offense was almost 20 years ago. The District Court then noted it was the role of the jury, not the court, to serve as the fact finder and as such, it was not the court's job to determine what may or may not have happened the day Housel died. The court again explained that by entering an *Alford* plea, Bristow had plead guilty and submitted himself to the court's sentencing authority for a deliberate homicide. The District Court sentenced

6

Bristow to 70 years in Montana State Prison with no restriction on parole eligibility. Bristow appealed.

¶10 We affirm.

## STANDARD OF REVIEW

¶11 "Ineffective assistance of counsel claims raise mixed questions of law and fact that we review de novo." *State v. Savage*, 2011 MT 23, ¶ 20, 359 Mont. 207, 211, 248 P.3d 308, 311.

¶12 Under the plain error doctrine, this Court may review errors that a party did not preserve for review. *State v. George*, 2020 MT 56, ¶ 5, 399 Mont. 173, 176, 459 P.3d 854, 855. This Court may review plain errors sparingly, on a case-by-case basis. *George*, ¶ 5. The party asserting a plain error argument must allege more than an error occurred in the lower court. *George*, ¶ 5. The party must show the error affected a fundamental right, and failure to review would create a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the proceedings, or compromise the integrity of the judicial process. *George*, ¶ 5.

## DISCUSSION

¶13 *1. Whether Bristow's trial attorney provided ineffective assistance of counsel when he advised Bristow, and the court, that mitigated deliberate homicide was not a lesser-included offense of deliberate homicide.*

¶14 We review ineffective assistance of counsel (IAC) claims based on the two-part test established in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052. *Savage*, ¶ 22. But, before we can address the merits on direct appeal, we must consider whether the claim is

7

properly before the Court, or if a postconviction proceeding would better address it. *Savage*, ¶ 23. When an IAC claim is record-based, or the record shows why counsel took a certain action, the claim is proper on direct appeal. *Savage*, ¶ 23. However, if the IAC claim is based on incidents or factors outside the record, then a petition for postconviction relief is more appropriate. *Savage*, ¶ 23. That way, a defendant can develop the record needed to show why counsel acted the way s/he did. *Savage*, ¶ 23.

¶15 Here, we simply do not know the "why" behind Bristow's counsel's actions. During the plea hearing, counsel addressed the District Court's assumption that mitigated deliberate homicide was a lesser included offense to deliberate homicide:

> **[Court]** So if you went to trial, the state has charged you with the offense of deliberate homicide. But your attorneys would offer jury instructions on the lesser included offenses of mitigated deliberate homicide and negligent homicide. Do you understand that by pleading guilty you are waiving these rights?
>
> **[Bristow]** Yes.
>
> **[Defense]** And, Judge, if I may?
>
> **[Court]** Yes.
>
> **[Defense]** I think legally—and [the Prosecutor] can correct me if I'm wrong—I don't believe mitigated is actually a lesser included.
>
> **[State]** That's true, Judge.
>
> **[Court]** Oh, is that right? Okay. All right.
>
> **[Defense]** Negligent is. I just wanted it to be clear.

Additionally, the plea agreement between the parties only listed negligent homicide as a lesser included offense to deliberate homicide. Contrary to defense counsel's

representation and the prosecutor's confirmation of the representation that mitigated deliberate homicide is not a lesser-included offense of deliberate homicide, mitigated deliberate homicide is a lesser included offense of deliberate homicide under § 45-5-103(2), MCA. Regardless, the District Court made it clear to Bristow that, by pleading guilty, he would lose his opportunity to argue for the lesser offenses of mitigated or negligent homicide. *See e.g., State v. McFarlane*, 2008 MT 18, ¶ 30, 341 Mont. 166, 174, 176 P.3d 1057, 1064 (noting that "[a]lthough not enumerating lesser included offenses, the court nonetheless clearly informed [the defendant] that he would lose the usually advantageous opportunity to be convicted of any lesser included offenses by entering a guilty plea, and [the defendant] acknowledged the loss of that opportunity.").

¶16    Perhaps Bristow's counsel (and the prosecutor) did not believe the factual presentation of this case would support submission of mitigated deliberate homicide instructions to the jury? Or, perhaps defense counsel was genuinely misinformed on the law? From the record we are unable to determine the motivation for defense counsel's representation of law to the court. Both the State and Bristow offer two different interpretations of what Bristow's counsel could have meant, but the record itself does not provide a basis for counsel's reasoning, nor is it clear from the context. Because we are left asking "why," we decline to address this issue on direct appeal. As they are not record-based, Bristow's claims of IAC are more appropriate for postconviction relief, if at all.

¶17    *2. Did the District Court err when it concluded the State's offer of proof provided sufficient evidence to accept Bristow's Alford plea?*

¶18    Bristow asserts the District Court erred in accepting his *Alford* plea as the State failed to present "strong evidence of guilt" as required by § 46-12-212(2), MCA. As Bristow did not object to the sufficiency of the State's offer of proof, Bristow asserts this claim should be reviewed under the plain error doctrine. Contrarily, the State asserts Bristow cannot establish how plain error review is warranted to consider whether the District Court's reliance on the State's offer of proof was sufficient to accept his *Alford* plea.

¶19    Bristow has not shown how the District Court's decision implicated his fundamental right to trial. Before accepting a guilty plea, the court must make sure the defendant understands certain factors, including the nature of his charge, the minimum and maximum penalty for the charge, and whether he shall have to pay any restitution fees. Section 46-12-210(1)(a), MCA. Additionally, the court must inform the defendant he has a right to plead not guilty, be tried by a jury, confront witnesses, and not be compelled to testify. Section 46-12-210(1)(c), MCA. Here, Bristow signed an acknowledgment of waiver of rights. The District Court also made sure that Bristow was aware of these rights and voluntarily waived them prior to accepting his *Alford* plea.

¶20    Additionally, before accepting an *Alford* plea, the court must apply the stricter standard set forth in § 46-12-212(2), MCA, which requires a showing of "strong evidence of guilt." *Commission Comments* to § 46-12-212, MCA. At the plea change hearing, the District Court confirmed with Bristow that he had seen and had the opportunity to review

10

all discovery—forensic, toxicology, autopsy, police reports, and law enforcement investigative reports—and confer with counsel about the discovery. The District Court also confirmed Bristow acknowledged there was a likelihood that a jury, upon review of this evidence at trial, could find him guilty of deliberate homicide and acknowledged he was submitting himself to the court's sentencing authority to sentence for the commission of a deliberate homicide. Bristow confirmed he was entering his plea voluntarily and acknowledged that entering an *Alford* plea was in his best interest. Because Bristow entered an *Alford* plea, the District Court had to look to other sources to provide the factual basis for the plea. *State v. Jackson*, 2013 MT 316, ¶ 12, 372 Mont. 312, 312 P.3d 462. As such, the District Court appropriately relied on the State's offer of proof in accepting Bristow's *Alford* plea.

¶21 The State's offer of proof set forth the evidence it would have presented to a jury at trial. Specifically, the State advised it would present evidence at trial that Bristow was under the influence of methamphetamine at the time of the incident. Multiple eyewitnesses would testify that Bristow and Housel had engaged in a verbal altercation which escalated with Bristow picking up a pistol, dry-firing it into the ground, then racking a bullet into the chamber, raising the gun, and shooting Housel in the head. The State-offered forensic evidence was consistent with the eye-witness accounts—and inconsistent with Bristow's account—and established that the bullet was fired within a foot from Housel's head, traveled on a flat trajectory through his head, and lodged into the door behind them. The bullet contained blood and hair that matched Housel's DNA. The State offered that

11

eye-witnesses would testify that Bristow offered to split up Housel's possessions between them if they kept quiet. The State outlined its evidence as to how Bristow disposed of the body—wrapping it in a tarp, placing it in a trash bin, and dumping it 20 miles away. Finally, the State outlined that Officer Ward, who interviewed Bristow the day after the incident, would also testify that Bristow initially lied to law enforcement claiming he was not present and had no knowledge of what happened to Housel.

¶22 Bristow argues the State's evidence only indicates a homicide took place, not what type of homicide, *i.e.*, negligent, mitigated deliberate, or deliberate, and that it was insufficient to establish the requisite mental state of purposely or knowingly. We do not agree. The State's offer of proof indicated direct evidence including consistent and corroborated eye-witness accounts and physical evidence consistent with those accounts. From the State's offer of proof, the District Court could infer Bristow acted purposely or knowingly by having a gun, firing the gun into the ground, racking another bullet into the chamber, and shooting the gun into Housel's head at a trajectory inconsistent with Bristow's account. From Bristow's behavior after the shooting, the District Court could further infer Bristow acted purposely or knowingly to cause Housel's death as he did not immediately indicate it was an accident but rather offered to divvy up Housel's belongings with witnesses in exchange for their silence. Further, he disposed of the body and the gun, moved Housel's truck off his property, and lied to law enforcement claiming he had no knowledge of what happened to Housel. We conclude the evidence in the State's offer of proof was sufficient to satisfy the "strong evidence of guilt" standard of § 46-12-212,

12

MCA. Bristow has failed to even establish error affecting a fundamental right, and thus cannot establish a manifest miscarriage of justice, leave unsettled the question of fundamental fairness of the proceedings, or compromise the integrity of the judicial process. Accordingly, we will not review the issue under plain error.

## CONCLUSION

¶23　Bristow's claim for IAC is not appropriate for direct appeal as it is not record-based and thus more appropriate for postconviction relief, if at all. Additionally, Bristow fails to establish how plain error review of the sufficiency of his *Alford* plea is warranted.

¶24　Affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

Justice Jim Rice, concurring.

¶25　I concur with the Court's resolution of the appeal, including its determination that the record is not sufficient to reach and address Bristow's IAC claim against his trial counsel. Opinion, ¶ 16. However, in my view, the record clearly justifies further review of the claim in postconviction proceedings.

13

¶26 Shortly before Bristow's scheduled trial for deliberate homicide, the parties advised the District Court they had reached a plea agreement, and submitted a written agreement wherein Bristow stated, "I maintain my innocence that I deliberately killed" Housel, but further stated that Bristow believed it was in his best interest to enter an Alford guilty plea to the charge. The agreement acknowledged that Bristow was waiving his trial rights, including "that negligent homicide is a lesser included offense[] that might apply to my case." Consistent with what would occur at the change of plea hearing, the plea agreement made no mention of mitigated deliberate homicide as a lesser included offense.

¶27 During the change of plea colloquy, after the District Court had advised Bristow that his attorneys could offer jury instructions on the lesser included offenses of mitigated deliberate homicide and negligent homicide if he went to trial, defense counsel interjected to state that mitigated deliberate homicide was *not* a lesser included offense of deliberate homicide, and only negligent homicide was. Opinion, ¶ 15. After the prosecutor confirmed this, the District Court accepted this in its advisory to Bristow. Of course, that information, conveyed to Bristow to lay the foundation for his plea, was incorrect in his case. *See* § 45-5-103(2), MCA ("Mitigated deliberate homicide is a lesser included offense of deliberate homicide as defined in 45-5-102(1)(a) . . . . ").

¶28 Bristow argues he was prejudiced by his counsel's representation because he was not disputing that he had taken Housel's life, only that he had done so because of extenuating circumstances, including extreme stress. *See* § 45-5-103(1), MCA (mitigated homicide is causing the death of another "under the influence of extreme mental or

14

emotional stress for which there is reasonable explanation or excuse."). Bristow's briefing argues that, because he was advised that mitigated homicide was not available to him, he decided to enter an Alford plea to deliberate homicide and "address the mitigating facts of his case at sentencing." Disconcertingly, defense counsel's additional comments at the change of plea hearing are consistent with this asserted plan:

> Your Honor, the other thing I would say is the Alford part of this plea is somewhat -- very fact specific. He is agreeing that he caused the death of Cory Housel. Whether it is deliberate, negligent, mitigated really is where negotiation broke down. The Alford part is really the solution to that. We agreed to put the sentencing in kind of your hands -- or in your hands -- and *really to address the negligent mitigated aspects of the case*. [(Emphasis added.)]

In regard to mitigation, Bristow argues he shot Housel during an argument that occurred after people had come to Bristow's residence to confront Housel, with whom Bristow had developed a relationship in the nature of father and son, about theft, that there had been screaming and yelling by these visitors, and that Bristow and Housel had gotten into a verbal altercation. However, despite counsel's above-quoted statement in the hearing, eligibility for mitigated deliberate homicide is not a consideration at sentencing for deliberate homicide, which the District Court also later explained at the sentencing hearing.

¶29 Nonetheless, beyond the specter indicated in the transcript of the change of plea hearing, and the omission in the plea agreement, I cannot verify Bristow's assertion that he was induced to enter a plea to deliberate homicide by incorrect advice received from his counsel about his eligibility, as a matter of law, to pursue mitigated deliberate homicide as a lesser included offense. Bristow's briefing repeatedly alleges that he was so "advised,"

15

as if, prior to the change of plea hearing, his counsel misinformed him about his eligibility to pursue the defense at trial, but there is no record of this or about Bristow's understanding and decision to enter the Alford plea. Further, when Bristow later moved to withdraw his Alford plea, it was not on this asserted ground; rather, Bristow argued in his motion that, while he acknowledged killing Housel, he "has maintained it was an accident," which would be consistent, not with mitigated deliberate, but with negligent homicide, about which he was correctly advised was an available lesser-included offense.

¶30 The State argues there could be no IAC because the facts of this case would not support giving a mitigated deliberate homicide instruction at a trial. However, this argument conflates the factual and legal eligibility for a lesser included offense, a distinction that could play a critical role in a defendant's pre-trial decision to enter a plea to the greater offense. If ineligible as a matter of law, there would be no sense in even contemplating the defense, including the possibility the defendant could testify at trial about the stress he had acted under.[1] Notably in this regard, more than one eyewitness to the shooting stated they did not know why Bristow shot Housel, just that he had. We have previously reversed a guilty plea for similar conflation about an available defense:

> [I]t is problematic that the court confidently expressed its view on an issue which could also have been tested factually before a jury. Clearly, it was not explained to Chase by the Court that the "public way" issue he felt strongly about, while not constituting a legal defense to the charge, was yet available as factual defense which he could raise at trial.

---

[1] The State also argues defense counsel's statements at the change of plea hearing "most likely meant" that counsel did not believe mitigated deliberate homicide was supported by the factual record. In my view, the transcript does not appear to capture that nuance.

16

*State v. Chase*, 2006 MT 13, ¶ 19, 331 Mont. 1, 127 P.3d 1038 (overruled in-part on other grounds).

¶31    However, when the totality of the current record here is considered, I agree the IAC claim would need to be examined in a postconviction relief proceeding.

/S/ JIM RICE